# Staunton.

## S. H. KRESS AND COMPANY V. ALICE MARTIN ROBERTS

September 17, 1925.

1. FALSE IMPRISONMENT—*Evidence of Good Character of Plaintiff—Case at Bar.*—In the instant case, an action for false imprisonment, on a charge of theft, plaintiff introduced in chief seven witnesses to prove her good character, but did not produce any evidence which tended to show that the character of the plaintiff was known to the defendant. The right of recovery relied on by the plaintiff was not that the act of the defendant was done maliciously, but that it was merely an unlawful act.

   *Held:* That it was error for the trial court to refuse to strike out the evidence of plaintiff's good character.

2. FALSE IMPRISONMENT—*Definition.*—False imprisonment is any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere.

3. FALSE IMPRISONMENT—*Gist of the Action.*—The gist of the action is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process. The character of a plaintiff, in an action for false imprisonment, is not involved, so far as the mere right to recover is concerned. Though, in fact, a criminal and devoid of character, if one is falsely imprisoned, he has a cause of action.

4. FALSE IMPRISONMENT—*Damages—Action not Malicious.*—In an action for false imprisonment, where the act was done unlawfully, but not maliciously, the damages awarded must be compensatory for the loss of time, for the suffering, bodily and mental, sustained by reason of such wrongful act or acts, and for expenses incurred in procuring discharge from restraint, including a reasonable attorney's fee.

5. FALSE IMPRISONMENT—*Reputation of Plaintiff.*—While the bad reputation of a plaintiff in an action for false imprisonment may be shown on the question of *quantum* of damages, the plaintiff may not introduce evidence of good character before his character has been attacked. Where no attempt has been made to show plaintiff's reputation to be bad, he must rely upon the general presumption of good character.

6. FALSE IMPRISONMENT—*Evidence—Character—Permitting Plaintiff to Identify Herself.*—In an action for false imprisonment it was proper

to permit plaintiff, by her own testimony, to identify herself by showing that she was the owner of at least twenty thousand dollars worth of property in the city of Roanoke; and that she was the wife of a highly respected citizen.

Error to a judgment of the Court of Law and Chancery of the city of Roanoke, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*C. S. McNulty* and *Horace M. Fox*, for the plaintiff in error.

*Woods, Chitwood, Coxe & Rogers*, and *Jackson & Henson*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This was an action for false imprisonment, in which there was a judgment for the plaintiff, Mrs. Alice Martin Roberts.

The proceeding was by notice of motion, and it is alleged in the notice, which was sued out of the clerk's office in November, 1923, that on the 18th day of December, 1922, the plaintiff was arrested in the city of Roanoke, on a charge of petit larceny, preferred by H. C. Mousel, who was the servant and agent of the defendant; that the plaintiff was taken into custody by certain police officers of the city, at the instance of Mousel, and was led through the store of the defendant, in the presence of a large concourse of people, and was, against her will, compelled to enter the patrol wagon

of the police department and was kept confined therein for the space of twenty minutes, and was then taken by the police officers to the police headquarters and there detained for two and a half hours, when she was released on bail for her appearance on the following morning; that on the 19th of December, the day following her arrest, she was tried before the police justice of Roanoke city, on the charge of petit larceny preferred by Mousel, and was acquitted and discharged from further custody.

The evidence in the case is in hopeless conflict. It appears, however, from the record, that on the 18th of December, 1922, the plaintiff came to the city of Roanoke on an early morning train, from her home in Alta Vista, Virginia, for the purpose of adjusting a matter of rent due her by one of her tenants who resided in Roanoke. During the course of the day, she met a cousin of hers by the name of Coy Martin, who invited her to take supper with him. After she had completed her business engagements, she decided to accept the invitation of her cousin and made an effort to locate him, but without success.

About six o'clock p. m., she entered the store of the defendant, with the idea of waiting to see her cousin, as she knew he usually passed this store on his way home. While waiting, her attention was attracted to some doilies lying on the counter. (There is a conflict in the evidence as to whether the doilies were lace or paper. If lace, they were worth about $3.50; if paper, only a few cents.)

From this point, the statement of the plaintiff is that she saw her cousin, Mr. Martin, pass the door, and with the doilies in her hand, she went out of the store to speak to him, but before she had an opportunity to do so, Mr. Mousel, the floor manager of

defendant, caught her by the arm and asked her if she meant to pay for the doilies; that she answered: "Yes; I absolutely do;" that Mousel then took hold of her arm and pulled her back into the store, down the aisle, and took her to the office and called the police, who, as stated, took her to police headquarters.

She further stated that when she arrived at the police station she made no effort to get into communication with her cousin, Coy Martin, but did call up a Mr. Phelps, who was cashier of the National Exchange Bank, who came to the police station, arranged bond for her, and then drove her to the home of Coy Martin where she spent the night; that she did not tell either Martin or his wife of her arrest; that after her trial she returned to her home but did not inform her husband of the occurrence; that her husband was a conductor on the Virginian Railway, but at the time was very ill; that she told him of the arrest several months afterwards. She gave no reason for the delay in instituting her action for damages.

The account of the arrest, as given by Mousel, is, that he saw the plaintiff take a bunch of the doilies from the counter, look around the store, and then drop them into her shopping bag and walk out of the store and proceed down the avenue; that she did not call anyone; that he caught up with her eight or ten steps from the store door and said to her: "Pardon me, wouldn't you like to have that merchandise wrapped?" And she said: "What merchandise?" And was answered with the statement: "That which I just seen you take from my counter and you did not leave any pay for it;" that the plaintiff then took from her shopping bag the doilies and inquired the price of same; that she was informed she would have to go to the office to find out; that they went to the office, and, upon the

refusal of plaintiff to show the contents of her shopping bag, he called the police.

Mousel denied that he pulled or dragged the plaintiff through the store, and in this he is sustained by the other employees, who also testified that no indignity whatsoever was offered the plaintiff.

In the petition there are several assignments of error, some of which it will not be necessary to pass upon, in view of the conclusion reached.

The third assignment of error is to the refusal of the trial court to strike out all the evidence of the plaintiff as to the character and reputation of the plaintiff.

[1] In the instant case, the plaintiff introduced in chief seven witnesses to prove her good character. The plaintiff did not, however, produce any evidence which even tended to show that the character of the plaintiff was known to the defendant. The right of recovery relied on by the plaintiff is not that the act of the defendant was done maliciously, but that it was merely an unlawful act.

[2] False imprisonment is any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere. *Gillingham* v. *C. & O. Ry. Co.*, 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 798, 29 Am. St. Rep. 827.

[3,4] The gist of the action is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process. The character of a plaintiff, in an action for false imprisonment, is not involved, so far as the mere right to recover is concerned. Though, in fact, a criminal and devoid of character, if one is falsely imprisoned, he has a cause of action. Where the act is done unlawfully, but not maliciously, "the damages awarded must be compensatory for the loss of time, for the suffering, bodily and mental, sustained

by reason of such wrongful act or acts, and for expenses incurred in procuring discharge from restraint, including a reasonable attorney's fee. *Bolton* v. *Vellines*, 94 Va. 404, 26 S. E. 847, 64 Am. St. Rep. 737.

[5] While the authorities are in accord that the bad reputation of a plaintiff in an action for false imprisonment may be shown on the question of *quantum* of damages, there is a sharp conflict on the question as to whether or not, in such cases, the plaintiff may introduce evidence of good character before its attack.

In the case of *Diers* v. *Mallon*, 46 Neb. 121, 64 N. W. 722, 50 Am. St. Rep. 598, the court, after referring to the conflict in the authorities, says: "The better rule is, that where no attempt has been made to show the plaintiff's reputation to be bad, he must rely upon the general presumption of good character."

In a note to *Thurkettle* v. *Frost*, 4 Am. & Eng. Ann. Cas. 839, it is stated that "this evidence (of character) is not admissible unless it can be first shown that the reputation of the plaintiff was known to the defendant, or was of such general notoriety that he will be presumed to have known it."

In 11 R. C. L. 823, the rule is thus laid down: "The character of the plaintiff in an action for false imprisonment is not an issue unless it is attacked by the defendant, and therefore, in the absence of such attack, evidence of the good character of the plaintiff will not be received."

In *Claiborne* v. *C. & O. Ry. Co.*, 46 W. Va. 363, 33 S. E. 262, it is held that in an action for false imprisonment evidence of good character of plaintiff is not admissible unless the defendant has first attacked the same.

The reason for the rule excluding evidence of good character is found in R. C. L., Vol. 10, p. 947: "The

general rule in civil actions, unquestionably, is that the general character of the parties is not involved in the issue, and evidence concerning it is not admissible. Evidence of character is uncertain in its nature, because true character is ascertained with difficulty, and those who are called to testify are reluctant to disparage the influential, and often too willing to disparage one under a cloud. At best, such evidence is a mere matter of opinion, and, in matters of opinion, witnesses are apt to be influenced by prejudice or partisanship, of which they may be unconscious, or by the opinions of those who first approached them on the subject. The introduction of such evidence in civil cases to bolster the character of parties and witnesses who have not been impeached would make trials intolerably tedious and greatly increase the expense and delay of litigation. Hence, in a civil action, evidence of the general reputation of one of the parties for honesty is not admissible, unless the proceeding is such as to put the character of the party for honesty directly in issue."

In the instant case, the notice of motion contained an allegation that "the arrest and prosecution was malicious." However, the court order shows that "before the jury was sworn in this case, the plaintiff appeared and elected to abandon the action of malicious prosecution and to proceed solely upon that of false arrest and imprisonment as charged in said notice." By thus relinquishing any claim to punitive damages, the inquiry of the jury was confined solely to the question of compensatory damages.

Had the charge of malicious prosecution remained as one of the issues in the case, then the plaintiff would have had the right to introduce evidence of good character, to negative the fact of probable cause.

As the law presumed the character of the plaintiff to be good, the introduction of seven witnesses to support this presumption could, in all probability, have had but one effect on the jury, and that was to lead them away from the trial of the question of "compensation" and cause them to inflict a punishment for the alleged wrong done the plaintiff.

[6] It was proper for the plaintiff, by her own testimony, to identify herself. This she did by showing that she was the owner of at least twenty thousand dollars worth of property in the city of Roanoke, and that she was the wife of a highly respected citizen. But, by the great weight of authority, it was not proper to permit the plaintiff to becloud the real issue by the introduction of an irrelevant issue.

For the error committed by the trial court in refusing to strike out the evidence relating to the good character of the plaintiff, we are of opinion that the case should be reversed and a new trial granted.

*Reversed.*