**Robert L. HEARN, Plaintiff,**

v.

**W. Alvin HUDSON, etc., et al., Defendants.**

Civ. A. No. 78–0248–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

April 23, 1982.

V. Anne Edenfield, Legal Aid of Roanoke Valley, Roanoke, Va., for plaintiff.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va., William M. Hackworth, Asst. Atty. Gen., Roanoke, Va., Donald Caldwell, Commonwealth's Atty., Roanoke, Va., for defendant.

## OPINION

TURK, Chief Judge.

■ This § 1983 action arises from the arrest and incarceration of plaintiff Robert L. Hearn on May 31, 1978. Plaintiff Hearn seeks declaratory, injunctive, and monetary relief for numerous violations of his civil rights allegedly committed on that day by the City of Roanoke, Virginia, the City Sheriff, three of the Sheriff's deputies, the Chief of the Roanoke City Police Department, two Roanoke City policemen, and two Roanoke City magistrates.[1] The case is now before the court on motions for dismissal and cross motions for summary judg-

ment. Many, but as shall become clear not all, of the material facts in this matter are not in dispute.

Plaintiff Hearn premises five separate claims on the events of May 31, 1978. Stated briefly, he urges first that the now-repealed breach-of-the-peace ordinance pursuant to which he was arrested is unconstitutionally vague and overbroad and that his arrest was therefore unlawful; he seeks a declaration of the ordinance's unconstitutionality, monetary damages from the arresting officers and the City of Roanoke, as well as expungement of any record of the arrest. Second, he contends that his rights were violated when the policemen arrested him and took him into custody instead of simply issuing him a summons and releasing him upon his promise to appear in court. Third, he urges that the manner in which the Roanoke City magistrates set his bail bond violated his rights. Fourth, he claims that he was unlawfully prevented from completing any telephone calls while confined at the Roanoke City Jail. Finally, he contends that jail personnel, in accordance with a policy of the City of Roanoke, were deliberately indifferent to his serious medical needs. Plaintiff alleges that he has an epileptic condition and claims that as a result of defendants' refusal to heed his requests for medical assistance, he experienced numerous epileptic seizures in his jail cell while awaiting the posting of his bail bond.

The following chain of events underlies these claims.

On May 31, 1978, plaintiff was arrested at his home by defendants C.B. Felty and R.A. Bower, both of whom are officers of the Roanoke Police Department. Felty and Bower had with them an arrest warrant

---

1. Plaintiff also names as a defendant the Police Department of the City of Roanoke. The Police Department moves for dismissal urging that it is merely an organizational division of the City and that it is not subject to suit as an entity independent of the City. This motion is well taken.

The capacity of a governmental unit to be sued in federal court is to be determined by reference to state law. Rule 17(b), F.R.Civ.P.

It appears that nothing in Virginia law recognizes municipal police departments as entities separate from their respective municipalities. Nor does anything in Virginia law support a direct action against a police department as an entity separate from the municipality itself. Accordingly, it is appropriate to grant the dismissal motion of the City Police Department. See Mayes v. Elrod, 470 F.Supp. 1188 (N.D.Ill. 1979).

charging plaintiff with breach of the peace, in violation of a local ordinance, former Roanoke, Va., Code Tit. 23, Ch. 4, § 1. This ordinance was repealed on December 3, 1979.[2]

The incident which seems to have precipitated the charge against plaintiff evidently was his threatening to harm some neighborhood children who, contrary to plaintiff's wishes, had been playing in his yard. (Hearn Dep. 76–77). A neighbor swore out a criminal complaint before defendant Bobby D. Casey, who is a Roanoke City magistrate. Magistrate Casey, finding probable cause to believe that a violation of the ordinance had occurred, issued the warrant for plaintiff's arrest.

When Magistrate Casey issued the warrant, he apparently wrote on it the figure of $200.00 in a space designated "bond required."[3] After executing the warrant in accordance with its mandate, that is, by arresting the plaintiff, Officers Felty and Bower brought the plaintiff before defendant John A. Stinson, another Roanoke City magistrate. It is alleged that Magistrate Stinson failed to inquire—as he was required so to do[4]—into plaintiff's individual circumstances to determine the amount or terms of his bail. Plaintiff asserts that the Roanoke city magistrates routinely set the amount of bail at the time the warrant is issued; later, when the arrested suspect is brought before the magistrate for a bail hearing, the predetermined amount of cash bail bond, as already written on the warrant, allegedly is followed mechanically. Plaintiff asserts that there was no inquiry into his individual circumstances or into means of assuring his presence for trial less restrictive than cash bail bond.

Unable to post the $200 cash bond required in his case, plaintiff was taken to the Roanoke City Jail. There is some dispute concerning the facts underlying plaintiff's claim that jail officials repeatedly denied his requests to place a telephone call.[5] There is also some dispute as to the facts concerning plaintiff's claimed epileptic seizures and medical needs in the city jail.

In all, plaintiff was in police custody for about twelve hours. A friend posted his bail bond. The breach-of-the-peace charge was dismissed without ever coming to trial.

## I.

One aspect of plaintiff's attack upon the breach-of-the-peace ordinance requires little discussion. The repeal of the ordinance of course has rendered moot plaintiff's prayer for a declaration of its invalidity. *See Allee v. Medrano,* 416 U.S. 802, 818, 94 S.Ct. 2191, 2202, 40 L.Ed.2d 566 (1974); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533 at 276 (1975).[6] Plaintiff's damage claim, however, was not mooted by the repeal of the ordinance. 13 C. Wright, A. Miller & E. Cooper, *supra* at 272–73 (1975).

---

**2.** Roanoke, Va., Code Tit. 23, ch. 4, § 1 (1956) (repealed) (current version at Roanoke, Va., Code Tit. 23, ch. 4 §§ 1.1, 1.2 (1979)) provided:
 Any person who shall engage in any illegal or improper diversion or make a disorderly noise or use any insulting, indecent or immoral language or shall be guilty of any indecent, insulting or immoral conduct or behavior within the corporate limits of the City of Roanoke, Virginia, to the annoyance or disturbance of any of its citizens, or shall in any way disturb the quiet and good order of the said City, shall be fined not less than $1.00 nor more than Twenty-five Dollars, or imprisoned in jail for not more than Thirty days, or both such fine and imprisonment.

**3.** In his deposition Magistrate Stinson, also a defendant here, characterizes the $200 figure as a "suggested bail." (Stinson Dep. 8).

**4.** *See* Va.Code §§ 19.2–121, 123.

**5.** Defendants Casey and Stinson, the city magistrates, strongly deny any liability to the plaintiff regarding access to the telephone. It appears, however, that plaintiff never asked the magistrates if he could place a telephone call (Hearn Dep. 60). In any event, the telephone access claim is leveled against personnel of the Roanoke City Jail instead of the city magistrates.

**6.** Repeal obviously ensures that enforcement of the ordinance here challenged will not be a matter capable of repetition yet evading review. *See Southern Pac. Term. Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

Nevertheless, the court has concluded that plaintiff is not entitled to recover damages from any of the defendants in this case on the claim that the arrest was unlawful because undertaken pursuant to an unconstitutionally vague or overbroad statute. As will be shown herein, the enforcement of a concededly vague or overbroad statute does not itself result in any injury compensable under § 1983 when the activity that triggered enforcement is without constitutional protection.

### A.

It is of course well settled that damages may be awarded under § 1983 for deprivations of constitutional rights.[7] It is now clear that the availability of damages awards under § 1983 is governed by principles of compensation. The Supreme Court has expressly disapproved the notion that those who violate constitutional rights should be held strictly liable to their victims, regardless of whether the constitutional violation caused the injury. *Carey v. Piphus,* 435 U.S. 247, 254–57, 98 S.Ct. 1042, 1047–49, 55 L.Ed.2d 252 (1978). Similarly, the Court has not accepted the suggestion that the plaintiff's injuries in cases of deprivations of constitutional rights should be presumed. *Id.* Rather, the Court has concluded that:

> [T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights .... Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect.

435 U.S. 254, 98 S.Ct. at 1047. Thus, damages may be awarded a plaintiff under § 1983 to the extent necessary to compensate him for the injury he experienced with respect to a protected interest. Obviously, where no interest protected by the asserted right is injured, a damages award would not be appropriate.

### B.

The first branch of plaintiff's claim to damages in connection with the allegedly unlawful arrest proceeds, as noted earlier, on the contention that the ordinance he was charged with violating is fatally overbroad and thus offends the First Amendment. Even if this ordinance were held to be unconstitutionally overbroad, however, the court concludes that plaintiff would not be entitled to recover damages under the circumstances disclosed here.

To be sure, injuries to interests protected by the First Amendment are compensable.[8] But only when a plaintiff's *own* interests in free expression have been injured can he maintain a damages action based on the First Amendment.[9] And, of

---

**7.** *See Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). Title 42 U.S.C. § 1983 provides generally that state actors who deprive individuals of federal rights "shall be liable to the party injured in an action at law...."

**8.** *E.g., Dellums v. Powell,* 566 F.2d 167, 194–195 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (*Bivens*-style damage action maintainable under First Amendment where demonstrators were arrested in violation of their First Amendment rights); *Paton v. LaPrade,* 524 F.2d 862, 869–871 (3d Cir.1975) (damage action maintainable where FBI had established a file on plaintiff who had requested material from the Socialist Workers' Party for a school research project); *Yiamouyiannis v. Chemical Abstracts Serv.,* 521 F.2d 1392, 1393 (6th Cir.1975) (employee of federally-funded employer threatened with dis-

charge for publicly speaking in opposition to fluoridation of drinking water, contrary to position of funding agency); *Economou v. Butz,* 466 F.Supp. 1351, 1363 (S.D.N.Y.1979) (damages action implied under First Amendment against federal officials for allegedly subjecting merchant to groundless administrative proceeding in retaliation for criticizing policies of federal agency).

**9.** This may be considered as a corollary of the usual requirement in civil litigation that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). *See generally,* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart and Wechsler's The Federal Courts and The Federal System 150–96 (2d ed. 1973) & Supp. 36–61 (1977).

course, to be compensable the injury must be to an interest within the scope of First Amendment protection.

In the instant case the plaintiff does not claim that his own personal interests in freedom of expression have been injured. His First Amendment claim is simply that the ordinance is so broadly drafted that it "sweeps protected speech and activity within its ban." Relying on overbreadth analysis, plaintiff seeks to assert the rights of hypothetical third persons to whom the ordinance might conceivably be applied in a manner that might violate, not his, but their rights.[10]

In its realization that "the First Amendment needs breathing space," *Broadrick v. Oklahoma,* 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973), the Supreme Court has entertained claims of facial overbreadth as an exception to the usual rules of standing. "Litigants . . . are permitted to challenge [an overbroad] statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." 413 U.S. at 612, 93 S.Ct. at 2916. It is the chilling effect that the overbroad statute has on *others'* protected activities that warrants the courts' hearing the constitutional attack upon it.[11]

As this court views the matter, the principles underlying overbreadth adjudication do not provide any basis for fashioning a compensatory remedy in a civil action. In classic overbreadth analysis courts may disregard entirely the particular activity of the person challenging the statute; whether his own activity was actually within the zone of First Amendment protection is totally irrelevant to the question of overbreadth. He will be permitted—for the sake of those who presumably feel the chilling effect of the overly broad statute on *their* freedom of expression—to litigate its constitutionality. Thus the facial overbreadth of a statute may warrant setting aside a conviction in a criminal case without regard to the particular conduct of the defendant.[12]

In addressing the compensation issue, however, we must focus on the actual injury to the plaintiff, as *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), makes clear. That requires in the First Amendment area an inquiry into whether the activity of the plaintiff is susceptible of First Amendment protection; for if that activity was not protected or privileged, the plaintiff obviously cannot be deemed injured in his First Amendment interests when government forbids that activity. In the instant case the speech which led to invocation of the ordinance consisted of face-to-face threats of harm addressed to children. Such utterances are plainly without constitutional protection. Although overbreadth analysis may very well have afforded the plaintiff a good defense in criminal proceedings,[13] it is obvious that arresting him and charging him with violating the ordinance infringed none of his own personal First Amendment rights. He

---

**10.** *See* Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 845 (1970).

**11.** *See id.*

**12.** *E.g., Lewis v. City of New Orleans,* 415 U.S. 130, 132–34, 94 S.Ct. 970, 972–73, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson,* 405 U.S. 518, 520–21, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972); *Coates v. City of Cincinnati,* 402 U.S. 611, 616, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971). *Thornhill v. Alabama,* 310 U.S. 88, 96–98, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940). More recently, however, the Court has been less willing to disregard the conduct of the individual charged with violating the statute or rule and has suggested limits on the assertion of facial overbreadth in speech cases. *See, e.g., Parker v. Levy,* 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974) (Court declined to undertake facial overbreadth review in challenge to military regulations by litigant whose conduct was clearly unprotected); *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973) (facial overbreadth review becomes less appropriate as activity sought to be prohibited moves from "pure speech" toward conduct).

**13.** *See Lewis v. City of New Orleans,* 415 U.S. at 132–34, 94 S.Ct. at 972–73; *Gooding v. Wilson,* 405 U.S. at 520–21, 92 S.Ct. at 1105.

therefore can assert no right to compensation under the First Amendment under the circumstances presented here.

## C.

■ For similar reasons, it seems clear that the vagueness—even fatal vagueness—of an ordinance cannot itself justify an award of monetary damages to persons against whom the ordinance is enforced when the speech or conduct that actually triggered enforcement may constitutionally be proscribed.

A brief consideration of the policies behind the void-for-vagueness doctrine shows that those policies, like the policies underlying the overbreadth doctrine, afford no basis for furnishing—in addition to declaratory and injunctive relief—a damages remedy in situations such as those presented in this case.

Vague laws are deemed offensive to due process because they "may trap the innocent by not providing fair warning" of what sorts of conduct are prohibited. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). *See United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954). It is palpably unfair to punish people for engaging in activity they could not have known was unlawful. Also, the subjectivity of the terms in a vague statute may conduce to arbitrary and discriminatory enforcement. 408 U.S. at 109, 92 S.Ct. at 2299.[14] These considerations may afford good reasons for holding a statute void on its face and enjoining its enforcement.[15]

But, again, when damages are sought in a § 1983 action, compensation principles require a close assessment of the injuries alleged to have been suffered by the claimant. *See Carey v. Piphus, supra.* Analysis must focus on the plaintiff's *own* conduct and whether any personal interests of the plaintiff said to be protected by the void-for-vagueness doctrine were violated under the facts of the particular case.

To repeat, the instant case involves the utterance of face-to-face threats of harm to children. It would be shortsighted indeed to suggest that prosecution for such activity is beyond the foreseeable reach of the law. "[M]en of common intelligence" should know that society might deem such activity to be criminal. *See Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). And as the Court stated in *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974), "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."

In short, the judicial technique of facial review does not open any avenues for compensation of individual plaintiffs.[16] This consideration, combined with the mootness of plaintiff's request for declaratory relief, warrants this court's granting the motions of defendants Felty, Bower, Hooper, and the City of Roanoke for summary judgment with respect to the legality of the arrest and the constitutionality of the breach-of-the-peace ordinance.

Because of the conclusion herein that plaintiff has not stated a claim in connec-

14. Vague laws might also exert a chilling influence on activity protected by the First Amendment. 408 U.S. at 109. To that extent, the vagueness problem very closely resembles that of overbreadth. *See* Note, *supra* note 10 at 845 n. 5, 871–75. Both judicial approaches generally entail review merely of the language of the law.

15. *See, e.g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Gregory v. City of Chicago,* 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); *Squire v. Pace,* 380 F.Supp. 269 (W.D.Va.1974).

16. Plaintiff's state-law claim—that the defendants in arresting him committed the tort of

false imprisonment—is without merit. Obviously critical to making out a case of false imprisonment is that the arrest be unlawful. *E.g., S.H. Kress & Co. v. Roberts,* 143 Va. 71, 75, 129 S.E. 244, 246 (1925). Plaintiff's assertion that the arrest was violative of Virginia law proceeds solely on his assumption that Va.Code § 19.2–74 required the arresting officers to issue plaintiff a summons instead of executing the warrant by arresting him. In light of the court's conclusion, *infra* p. 959 that Va.Code § 19.2–74 contains no such requirement, the state-law false imprisonment claim will be dismissed.

tion with the city ordinance upon which relief may be granted, it is unnecessary at this time to explore the availability to the various defendants of the qualified good faith immunity defense. *See Owen v. City of Independence, Mo.* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

### D.

Plaintiff seeks an order requiring defendants to expunge the record of his arrest.[17]

 Even though "the area is a sensitive one involving delicate policy considerations," *Wilson v. Webster,* 467 F.2d 1282, 1284 (9th Cir. 1972), it is not beyond the authority of the federal courts to order the equitable remedy of expungement of criminal records. *E.g., Woodall v. Pettibone,* 465 F.2d 49, 52–53 (4th Cir. 1972). *See Doe v. Webster,* 606 F.2d 1226, 1230–31 (D.C.Cir. 1979); *United States v. Bohr,* 406 F.Supp. 1218 (E.D.Wis.1976); *Wheeler v. Goodman,* 306 F.Supp. 58 (W.D.N.C.1969), *vacated and remanded on other grounds,* 401 U.S. 987, 91 S.Ct. 1219, 28 L.Ed.2d 524 (1971). In this case, however, the court has concluded that plaintiff's expungement request raises issues upon which this court should abstain.[18] Because this court's entering an order of expungement at this juncture would conflict unnecessarily with the State in its administration of its own affairs, the issue is one upon which Burford-type abstention is appropriate. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[19]

The Virginia legislature has recently enacted a procedure pursuant to which an individual may obtain from the Circuit Court wherein the criminal matter was concluded an order of expungement such as that sought here. Section 19.2–392.1 of the Virginia Code states the purpose of this procedure:

> The General Assembly finds that arrest records can be a hindrance to an innocent citizen's ability to obtain employment, an education and to obtain credit. This chapter is intended to protect the innocent persons who are arrested from unwarranted damage which may occur as a result of being arrested.

Section 19.2–392.2 of the Code sets out the procedure for obtaining an order of expungement:

> If a person is charged with the commission of a crime and
>
> 1) Is acquitted, or
>
> 2) A nolle prosequi is taken or the charge is otherwise dismissed, he may file a petition setting forth the relevant facts and requesting expungement of the police records and the court records relating to the charge.
>
> B. The petition shall be filed in the circuit court of the county or city in which the case was disposed of by acquittal or being otherwise dismissed.
>
> C. A copy of the petition shall be served on the Commonwealth's attorney of the city or county in which the petition is

---

**17.** The repeal of the ordinance does not render moot plaintiff's request for expungement. *See Wilson v. Webster,* 467 F.2d 1282, 1283 (9th Cir.1972) (although the low likelihood of future enforcement of curfew regulation rendered issue of regulation's constitutionality moot, plaintiffs nevertheless were entitled to show that arrest record should be expunged). Plaintiff does not contend, nor does it appear that he successfully could contend, that the existence of the arrest record alone constitutes a sufficient "adverse collateral consequence" as to obviate mootness and require an adjudication with regard to the constitutionality of the now-repealed Roanoke breach-of-the-peace ordinance. *See Naylor v. Superior Ct.,* 558 F.2d 1363, 1365–66 (9th Cir.1977).

**18.** The propriety of abstention may be raised *sua sponte. Bellotti v. Baird,* 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); *AFA Distributing Co. v. Pearl Brewing Co.,* 470 F.2d 1210, 1213 (4th Cir.1973).

**19.** *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976); *Wohl v. Keene,* 476 F.2d 171, 174 (4th Cir. 1973); *AFA Distributing Co. v. Pearl Brewing Co.,* 470 F.2d 1210, 1213 (4th Cir.1973); 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4244 (1978).

filed. The Commonwealth's attorney may file an objection or answer to the petition within twenty-one days after it is served on him.

D. Hearing by court; granting or denial of expungement.—The court shall conduct a hearing on the petition. If the court finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes or may cause circumstances which constitute a manifest injustice to the petitioner, it shall enter an order requiring the expungement of the police and court records relating to the charge. Otherwise, it shall deny the petition.

E. The Commonwealth shall be made party defendant to the proceeding. Any party aggrieved by the decision of the court may appeal, as provided by law in civil cases.

F. Upon the entry of an order of expungement, the petitioner may cause a copy of such order to be served upon the Criminal Justice Services Commission, which Commission shall, pursuant to rules and regulations adopted pursuant to § 9–111.9 of this Code, direct the manner by which the appropriate expungement or removal of such records which the court shall have ordered expunged.

And Va.Code §§ 19.2–392.3 and 19.2–392.4 make disclosure of expunged records unlawful.

Thus, the remedy of expungement may be had in Virginia's state courts if retention of the record of an individual's arrest would result in "manifest injustice" to him.

It is far from clear that the expungement request in the instant case raises any federal question independent of the constitutionality of the breach-of-the-peace ordinance.[20] Moreover, the Virginia legislature has endeavored to develop a uniform policy and remedial mechanism regarding a problem of substantial concern both to the State in its routine record-keeping procedures and to the citizen in his "ability to obtain employment, an education and to obtain credit." Va.Code § 19.2–392.1. It is clear that the administration of records related to law enforcement is a function close to the core of state government. An expungement order from this court would be a significant intrusion—and, in light of the availability of the state court procedure, an unnecessary intrusion—into the State's administration of its record-keeping. In order to prevent this unnecessary conflict, it would appear that the local court should be afforded the opportunity to implement the new remedy provided in the Virginia Code.[21]

Accordingly, this court will abstain from determining the matter.

Because the court here defers to avoid interference with state activities, dismissal of the claim for expungement, rather than retention of jurisdiction over this claim pending a state determination, is appropriate in this case. *Crawford v. Courtney,* 451 F.2d 489, 492 (4th Cir. 1971).

## II.

Plaintiff seeks to hold the arresting officers, defendants Bower and Felty, the Chief of Police (defendant Hooper), the

---

**20.** The repeal of the ordinance and the unavailability of damages to one in the instant plaintiff's position, of course, preclude adjudication of the constitutionality of the ordinance. And while awarding the remedy of expungement of an arrest record would tend to vindicate any violation of rights accompanying the arrest, the primary purpose of this remedy is that articulated by the Virginia legislature: Expungement of an arrest record serves to protect "an innocent citizen's ability to obtain employment, an education and to obtain credit." Va.Code § 19.2–392.1.

**21.** It is true that a litigant is required to *exhaust* state judicial remedies in vindicating federal rights only in exceptional circumstances or where there is a federal statutory requirement, such as, for example, that of 28 U.S.C. § 2254(b). *Lane v. Wilson,* 307 U.S. 268, 274, 59 S.Ct. 872, 875, 83 L.Ed. 1281 (1939); *Ballard Fish & Oyster Co. v. Glaser Const. Co.,* 424 F.2d 473, 475 (4th Cir.1970); *Amsley v. West Virginia Racing Comm'n,* 378 F.2d 815, 817 (4th Cir.1967). Here, however, it is not at all clear that plaintiff's expungement request is rooted in any federal right.

City, and the Police Department [22] liable for arresting him pursuant to a warrant and holding him in custody instead of simply issuing him a summons and releasing him upon his promise to appear in court. This aspect of the complaint apparently proceeds on the assumption that plaintiff had a liberty interest in receiving notice of the charges by way of a summons instead of being arrested and taken into custody. The argument seems to be that the officers should have executed the arrest warrant which had been delivered to them by issuing a summons. The defendants urge that plaintiff misperceives the Virginia statutes dealing with arrests and the issuance of warrants and summonses. They move to dismiss this aspect of the complaint for failure to state a claim upon which relief can be granted. This motion is well taken.

Section 19.2–74 of the Virginia Code provided at the time of plaintiff's arrest generally that whenever a person is detained for violating an ordinance, the officer shall issue him a summons, and when the person renders his written promise to appear in court, the officer is to release him "forthwith." [23] That section does not address the circumstances presented in this case; here, the officer already had been presented with a warrant for the person's arrest. Thus, the controlling code section is Va.Code § 19.2–72.

Section 19.2–72 of the Code leaves an officer into whose hands a warrant is delivered no choice. "[T]he warrant *shall* be directed to 'To any policeman . . . ,' and *shall* be executed by the policeman into whose hands it shall come or be delivered." Va.Code § 19.2–72 (emphasis added). The Code is absolutely unambiguous on how the officer is to execute the warrant. "A warrant shall be executed by the arrest of the accused. . . ." Va.Code § 19.2–76. Indeed, the warrant in this case commanded the officer holding it to arrest the plaintiff. Virginia law as it stood at the time of plaintiff's arrest clearly did not permit a policeman to disregard the mandate of an arrest warrant.

In short, defendants Felty and Bower did not violate the plaintiff's rights when they arrested him instead of issuing him a summons. [24]

Plaintiff also seeks to hold Chief Hooper of the Roanoke Police Department and the City of Roanoke liable for the arrest in lieu of summons. For the same reasons that require dismissal of this claim as to defendants Bower and Felty, this

---

22. *See* note 1 *supra.*

23. At the time of plaintiff's arrest, Va.Code § 19.2–74 provided, in part:

Whenever any person is detained by or is in the custody of an arresting officer for a violation of any county, city or town ordinance or of any provision of this Code punishable as a misdemeanor, except as otherwise provided in Title 46.1, or § 18.2–266 of the Code of Virginia, as amended, the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Upon the giving by such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody. . . .

. . . .

Anything in this section to the contrary notwithstanding, if any person is believed by the arresting officer to be likely to disregard a summons issued under the provisions of this section, the arresting officer shall take such person forthwith before the nearest or most accessible judicial officer or other person qualified to admit to bail in lieu of issuing the summons, who shall determine whether or not probable cause exists that such person is likely to disregard a summons, and may issue either a summons or warrant as he may determine proper.

Notwithstanding the above, if any person is reasonably believed by the arresting officer to be likely to cause harm to himself or to any other person, the officer may take such person before a magistrate or other issuing authority of the county or city in which the violation occurred and request the issuance of a warrant. . . .

24. It would appear in any event that defendants Felty and Bower, relying as they were, on a warrant valid on its face, would be entitled to the benefits of the qualified immunity from damage liability under § 1983. *See Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975); *Withers v. Levine,* 615 F.2d 158, at 163 (4th Cir.1980); *Gross v. Pomerleau,* 465 F.Supp. 1167, 1175–76 (D.Md. 1979).

claim must be dismissed as to defendant Hooper and the City.[25] Moreover, since defendant Hooper did not personally participate in the arrest of the plaintiff—indeed, he had no knowledge of it—he could not be held responsible pursuant to § 1983 for any illegality in the arrest. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977).

## III.

### A.

◼ The complaint alleges that after plaintiff was taken to the city jail, defendants Frye and Morgan violated plaintiff's rights by refusing to permit him to use the telephone to obtain bail money, medical assistance, or legal representation. Obviously, a person accused of crime retains his constitutional right to counsel despite his incarceration. *See Via v. Cliff,* 470 F.2d 271, 274–75 (3d Cir. 1972) (Sixth Amendment right to counsel); *McDonough v. Director of Paxtuxent,* 429 F.2d 1189, 1192 (4th Cir. 1970) (right of access to courts carries right to assistance of counsel). Although the needs of prison security may warrant limitations on the rights of pretrial detainees to the same extent that security needs warrant limitations on the rights of convicted individuals, *Bell v. Wolfish,* 441 U.S. 520, 544–48, 99 S.Ct. 1861, 1876–79, 60 L.Ed.2d 447 (1979), prison officials cannot, absent some valid justification, totally cut off pretrial detainees' communications with legal counsel or with those who might furnish bail money.

◼ Defendant Frye stated during his deposition that plaintiff made a call from the city jail as soon as plaintiff was brought to the jail. (Frye Dep. 80). Plaintiff asserts the contrary; he says he never made any calls from downtown; he says that throughout his period of confinement he was not given the opportunity to use the telephone, even though he requested to do

so. (Hearn Dep. 29). In light of this sharp dispute as to the facts underlying the claim, the court must deny this aspect of the motions for dismissal and summary judgment.

### B.

Plaintiff also seeks to hold Roanoke City Sheriff Hudson and Deputy Sheriff Brabham liable for "violation of their duty to train, instruct and supervise their deputies in the proper implementation of telephone rights of prisoners." This, it appears, is essentially an allegation of negligence insofar as it implies that defendants Hudson and Brabham were remiss in their supervisory responsibilities.

◼ In order to hold a supervisory official liable under § 1983, the plaintiff must show that the official acted or neglected to act in a manner indicative of deliberate indifference to deprivations of constitutional rights. *Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). There must be some "affirmative link between the occurrence of the various incidents of [official] misconduct and the adoption of a plan or policy by [supervisors] —express or otherwise—showing their authorization or approval of such misconduct." *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). And of course liability will only lie when a defendant is personally involved in the unconstitutional conduct. *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977). Thus at the very least, the supervisor, to be held liable, must previously have been apprised of the need for him to act to put a halt to the alleged unconstitutional conduct or conditions. *Withers v. Levine,* 615 F.2d 158 (4th Cir. 1980).[26]

◼ The plaintiff in this case does not suggest that defendants Hudson or Brabham were ever aware of, much less participated in, any incidents previous to that

---

**25.** *See also* note 1 *supra.*

**26.** Courts generally demand a high degree of culpability when confronted with claims of supervisory liability under § 1983. *E.g., Stringer v. City of Chicago,* 464 F.Supp. 887, 891 (E.D.

Ill.1979) (mere negligence insufficient; gross negligence or recklessness required); *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I. 1978) (recklessness required).

alleged by the plaintiff of deputies acting improperly with regard to inmate requests to use the telephone. Absent any such knowledge that further training was in order, defendants Hudson and Brabham cannot be held liable on the instant allegation.

## IV.

Plaintiff contends that Roanoke's city magistrates have an unconstitutional policy of denying those accused of crime of the opportunity for release on terms less restrictive than cash bail. He alleges that the amount of his bail was predetermined when the warrant was issued and that when he was later brought before a magistrate, there was no inquiry into the matters listed in the Virginia Code, §§ 19.2–121, 123. He seeks injunctive relief and monetary damages from defendants Casey and Stinson, both of whom are Roanoke city magistrates.

 As the court understands the dismissal motions of defendants Casey and Stinson, these defendants do not challenge the merits of plaintiff's contentions against them at this stage of the proceedings. Defendants Casey and Stinson take the more limited position that, as magistrates, they are immune from suit. This matter is of course well settled. Because they are judicial officers, local magistrates are immune from liability for money damages under § 1983. *Timmerman v. Brown,* 528 F.2d 811, 812 (4th Cir. 1975). This immunity, however, does not extend to claims for injunctive or declaratory relief. 528 F.2d at 814. Since the plaintiff seeks declaratory relief with respect to the allegedly unconstitutional conduct of defendants Casey and Stinson, their status as magistrates does not prevent plaintiff from going forward with his claims against them. *See Pugh v. Rainwater,* 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc).

## V.

Plaintiff's claim that prison officials denied him needed medical attention proceeds on two levels. He asserts, first, that jail officials continually denied his repeated requests for medication and assistance. Secondly, he alleges that the procedures employed when persons are admitted to the lockup at Roanoke City Jail are constitutionally deficient because jail personnel do not adequately inquire into the medical problems of incoming inmates.

## A.

The depositions reveal conflicting versions of the facts concerning the first part of this claim.[27]

Plaintiff had three bottles of pills with him when he was brought to the jail. He says that the pills were medication prescribed by a physician for his epileptic condition; he states he was to take the medication every four hours. Defendant Deputy Sheriff Frye, who was the docket officer on duty when plaintiff was brought to the jail, took the pills from the plaintiff, as appears to be the procedure followed for all incoming inmates with pills in their possession. Plaintiff claims that throughout his confinement at Roanoke City Jail he repeatedly asked for his epilepsy medication and asked to call his physician. Defendant Frye, however, recalls no such requests during the time he was working that day. The recollections of defendant Morgan, who apparently was the docket officer for the next shift, are not now in the record.

 The Eighth Amendment's prohibition on cruel and unusual punishment proscribes prison officials' "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Crucial to the establishment of a constitutional violation under *Estelle v. Gamble* is knowledge on the part of prison officials of the inmate-plaintiff's medical requirements. Hence, "deliberate neglect" may suffice to make out a claim, *Withers v. Levine, supra,* at 162, but an "inadvertent failure," to provide

27. The court's recitation of the facts on this claim is, of course, only for purposes of passing on the instant motions.

adequate medical care does not state a claim. *Estelle v. Gamble,* 429 U.S. at 105, 97 S.Ct. at 291.

■■■ Plainly, the allegations that prison officials ignored plaintiff's requests for medical attention with regard to his epileptic condition state a claim upon which relief may be granted. As the foregoing review of the present record suggests, there are genuine issues of material fact with regard to the element of deliberateness; it is a matter of dispute whether defendants Frye and Morgan had any knowledge of plaintiff's alleged medical needs. That issue may be resolved by the trier of fact at trial.

Nowhere, however, does plaintiff suggest that defendant Sheriff Hudson or Deputy Brabham had any direct personal involvement in the alleged denials of plaintiff's requests for medical attention. Defendants Brabham and Hudson must therefore be dismissed from this aspect of plaintiff's denial of medical assistance claim. *Vinnedge v. Gibbs, supra.*

### B.

The second part of plaintiff's medical needs claim—the attack on the procedures followed at the jail—does not present any genuine issues of material fact.

It is "not uncommon," according to defendant Frye, for people to have pills in their possession when they are brought to Roanoke City Jail. (Frye Dep. 82). Under the procedures established at Roanoke City Jail, any pills or medication an incoming inmate might have with him are taken from him and placed in the medical dispensary. When a person is admitted to the lockup portion of the jail, as was the plaintiff, the docket officer does not attempt to identify any drugs in the person's possession, and correctional officers are not permitted to dispense any medication taken from an inmate. If the inmate asks for the medication, the correctional officer is required to inform the on-duty paramedic about the

matter. Under the jail's procedures, the paramedic would then examine the inmate and the medication and, presumably, would take such steps as appeared medically appropriate. In short, if the inmate needs his medication he must bring the matter up himself.

■■■ Under the circumstances presented here, the court is unable to conclude that these procedures themselves fostered any deliberate indifference to the plaintiff's medical needs. Clearly, the case would be very different if a prospective inmate with medication in his possession were obviously unable to communicate his serious medical needs to prison personnel, or if attempted communications were systematically ignored. Prison officials' neglecting to act in the face of a known danger of serious harm to an inmate is actionable under § 1983. *Withers v. Levine,* 615 F.2d 158 (4th Cir. 1980). And, if episodes such as that allegedly experienced by the plaintiff occurred "with sufficient frequency to reasonably apprise prison officials of the existence of the problem and the need for protective measures," a valid claim might well be stated. *Withers,* at 161. That, however, is clearly not the case here. This is not to minimize any medical difficulties allegedly experienced by the plaintiff. It is simply to say that prison authorities cannot be faulted for the procedures they have designed unless those authorities 1) have previously been made aware that the procedures are in fact inadequate to detect and prevent unnecessary serious harm to inmates' health and 2) despite their awareness of the problem, those authorities nevertheless fail to implement ameliorative measures. *See Woodhous v. Virginia,* 487 F.2d 889 (4th Cir. 1973). Since there is no suggestion in the instant case that the authorities at Roanoke City Jail had previously been made aware of any deficiency in the procedures here under attack, the court must dismiss that portion of the complaint that challenges those procedures.[28]

---

**28.** Even if the procedures here questioned were held to be constitutionally defective, defendants Frye and Morgan, as docket officers, clearly had no role in fashioning the procedures and could not be held responsible for any inadequacy in them. Since these defendants were sim-

In summary, it appears that trial is warranted with regard to plaintiff's claim that defendants Frye and Morgan each refused plaintiff's requests for medical attention and to use the telephone. It further appears that trial is warranted on plaintiff's claim respecting bail procedures against defendants Stinson and Casey, but neither defendant Stinson nor defendant Casey shall be held liable for monetary damages. Each other claim is dismissed with respect to each other defendant.

### , ORDER

In accordance with the opinion this day entered it is hereby ORDERED and ADJUDGED as follows:

1) The motion of the plaintiff for summary judgment shall be, and the same hereby is, DENIED;

2) The motions of defendants Hudson, Brabham, Hooper, Felty and Bower, for summary judgment shall be, and the same hereby are, GRANTED;

3) The dismissal motions of defendants City of Roanoke and City of Roanoke Police Department shall be, and the same hereby are, GRANTED;

4) The motions of defendants Stinson and Casey for summary judgment shall be, and the same hereby are, GRANTED, but only to the extent that defendants Stinson and Casey shall not be held to respond in monetary damages in the instant cause;

5) The motions of defendants Frye and Morgan for summary judgment shall be, and the same hereby are, DENIED;

6) This cause shall be continued on the docket and shall be heard at trial on June 17 and 18, 1980.

ply conducting themselves in accordance with the standard operating procedure, and since they had no reason to doubt the constitutional propriety of those procedures, they would be entitled to the benefits of the qualified good faith immunity defense. *E.g., Skinner v. Spellman,* 480 F.2d 539 (4th Cir.1973); *Gross v. Pomerleau,* 465 F.Supp. 1167 (D.Md.1979).