Rex NOELKER, et al., Plaintiffs,

v.

CITY OF KANSAS CITY, MISSOURI,
et al., Defendants.

No. 91–0902–CV–W–6.

United States District Court,
W.D. Missouri, W.D.

Sept. 30, 1992.

Ewin Groce, Overland Park, Kan., for plaintiffs.

William D. Geary, Asst. City Atty., Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

SACHS, Chief Judge.

The plaintiffs have brought this civil rights action under 42 U.S.C. § 1983 seeking damages for alleged violations of their First Amendment rights. The matter is before the court on the parties' cross-motions for summary judgment.

This action arises out of the plaintiffs' arrest for violating a city noise ordinance. On four separate occasions in 1989 the four plaintiffs were individually arrested for causing a noise disturbance in front of Planned Parenthood premises in violation of City Ordinance § 24.10.[1] At the time of each arrest, each plaintiff was attempting through a loudspeaker to communicate opposition to abortion to prospective clients of Planned Parenthood. The plaintiffs were all speaking from the public sidewalk abut-

---

1. Section 24.10, now repealed, provided:
   No person shall unreasonably make, continue, or cause to be made or continued any noise disturbance, except when necessary in the performance of construction work as defined in section 24.3(q) of this chapter. Noncommercial public speaking and public assembly activities conducted on any public space or right-of-way shall be exempt from the operation of this section provided loudspeakers, public address systems or similar devices are not used or operated.
   Section 24.3(h), now repealed, defined noise disturbance as:
   Any sound which (a) endangers the safety or health of humans or animals, or (b) annoys or disturbs a reasonable person of normal sensitivities, or (c) endangers or injures personal or real property.

ting the offices of Planned Parenthood. Precipitating each arrest was a complaint from a representative at Planned Parenthood that persons outside their offices were causing noise disturbances. The City of Kansas City Health Department investigated each complaint and issued a summons to each of the plaintiffs. Except for plaintiff Coons, no sound decibel readings were taken before the plaintiffs were arrested. For that reason, the assistant city prosecutor refused to prosecute the summonses issued to plaintiffs Noelker, Lackey and Tebbets. The charges against them were dismissed on November 21, 1989.

Decibel levels were measured, however, before plaintiff Coons was arrested. As a result, her prosecution proceeded and on January 9, 1991, she was convicted in the Kansas City Municipal Court for violating § 24.10. She appealed to the Missouri Circuit Court. On January 15, 1991, in an unrelated case, the Jackson County Circuit Court found the subject noise ordinance to be unconstitutionally vague. The City then repealed the ordinance on May 31, 1991.[2] On June 21, 1991, the charges against plaintiff Coons were dismissed.

The plaintiffs argue that they are entitled to damages under § 1983 for violations of their First Amendment rights because they were arrested under a statute that was later declared to be unconstitutionally vague. The plaintiffs also argue that the ordinance constitutes an unlawful prior restraint on free speech, is overbroad and lacks the specificity required in penal ordinances. Injunctive and declaratory relief, which the plaintiffs do not seek, were mooted by the ordinance's repeal.

The defendants respond that the analysis must focus on the application of the ordinance, not the potential for abuse that

plaintiffs allege existed prior to repeal of the ordinances. The defendants argue that the noise ordinance, now repealed, as applied to the plaintiffs was constitutional.

For municipal liability to attach under § 1983 the plaintiffs must show that execution of a city policy caused their constitutional deprivations. *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). More specifically, the plaintiffs must demonstrate an official policy and a "direct casual link between [that policy] and the alleged constitutional deprivation." *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (explaining *Monell* ). The court finds that summary judgment is not appropriate at this time as there remain disputed questions of fact regarding whether, considering the quality of their conduct, the plaintiffs have personally suffered a constitutional deprivation.

In *Hearn v. Hudson,* 549 F.Supp. 949 (W.D.Va.1982), the district court found that even if the peace ordinance under which the plaintiff was arrested was held to be unconstitutionally overbroad or vague, the plaintiff was not entitled to damages where the plaintiff's own speech was outside constitutional protection. In that case, the plaintiff was reportedly threatening harm to some neighborhood children for playing in his yard. The plaintiff was arrested and charged with violating a breach-of-the-peace ordinance. However, the charges were later dismissed and the ordinance was repealed. The plaintiff then brought suit against the city, the police department, the policemen involved, the city sheriff, three sheriff deputies and two magistrates alleging violations of his civil rights. The court

**2.** Noise disturbance is now defined by reference to decibel levels, time and place, as well as background noise. Section 24.3(h) now provides:
(h) *Noise Disturbance:* Any sound level which:
(1) Exceeds an equivalent A-weighted sound level (Leq) of sixty (60) db(A) across a residential real property boundary or within a noise-sensitive zone, between the hours of 7:00 a.m. and 10:00 p.m.; or

(2) Exceeds an equivalent A-weighted sound level (Leq) of fifty-five (55) db(A) across a residential real property boundary or within a noise-sensitive zone, between the hours of 10:00 p.m. and 7:00 a.m.; or
(3) Exceeds an equivalent A-weighted sound level (Leq) of eighty (80) db(A) across a real property boundary within a commercial/light industrial district.

granted summary judgment in favor of the city and the policemen with respect to the legality of the arrest and constitutionality of the ordinance. The court found that even though the ordinance under which the plaintiff was arrested may have been unsound, threatening harm to children constituted a category of expression unprotected by the First Amendment. *Id.* at 956. Thus, the plaintiff could not maintain a damages action because his own interests in free expression had not been injured. *Id.* at 954–56.

■ The court finds the *Hearn* case persuasive, as applied to the present context. Here, the noise level of the plaintiffs' speech on the day they were arrested cannot be determined from the present record. Assuming, arguendo, that the repealed ordinance was unconstitutionally overbroad and vague, it is still possible that the plaintiffs created a noise level so loud as to be constitutionally subject to prohibition under a reasonable time, place and manner regulation, such as the new noise ordinance. *See Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). If so, the plaintiffs have probably not suffered a constitutional deprivation by their arrests and are not entitled to compensatory damages. It is clear that the plaintiffs would have standing to seek injunctive or declaratory relief from the ordinance, or assert its unconstitutionality as a defense in a criminal case. However, the *Hearn* case rules that parties should not be permitted to recover damages from a municipality when engaging in conduct otherwise subject to proscription just because the particular enactment under which they were arrested is later declared infirm. To hold otherwise would result in permitting the cross-burn-

ers in *R.A.V. v. City of St. Paul, MN*, —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), to recover damages; a result which seems bizarre even if one acknowledges religious motivation for the conduct here complained of.[3]

*Hearn* may be discounted as representing the view of a single district judge, but it seems not to have been questioned (or indeed cited for the significant point in issue) during the decade in which it has been on the books. In at least one appellate case *Hearn* has been noted as a decision allowing a defense to a damage suit defendant in a First Amendment case that would turn on whether plaintiff was engaging in "constitutionally punishable speech (whatever the defects in the town by-law itself)." *Earle v. Benoit*, 850 F.2d 836, 848 (1st Cir.1988).[4]

In relying on the theory of the *Hearn* case, I note that it does not seem far from the mainstream of current jurisprudence. Plaintiffs are seeking to extend *Owen* to allow damages regardless of misconduct, where enacting legislation is defective. It must be remembered that *Owen* split the Court 5–4, rejected the well-considered judgment of many lower court judges, and that Justice Powell's dissent, asserting qualified immunity for municipalities as well as their governing boards, retains much appeal. Although all judges necessarily accept the majority decision in *Owen*, the power of the minority position makes it likely, in my judgment, that it will be difficult to expand *Owen* beyond its context. When a plaintiff can be shown to have been guilty of misconduct (as by committing a common law nuisance or being susceptible to prosecution under a well-framed ordinance) any claim to damages is, to say the least, unappealing.

---

**3.** I recognize that other groups with perhaps more appealing claims could be precluded from seeking damages, under the *Hearn* rule. These could include war protesters, discrimination protesters and union picketers—but only if they engage in constitutionally punishable misconduct.

**4.** It will be conceded that the defendant, State Trooper Benoit, was entitled to assert qualified immunity, and a good faith defense, which is

not available to a municipality under *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The analysis by the First Circuit, however, suggests a possible weakness in plaintiff's case, rather than some strength in the defense, which is the analysis used in *Hearn*. Put differently, a person guilty of misconduct may not seek damages for his arrest for that misconduct, regardless of the invalidity of the legislative prohibition.

Adoption of the *Hearn* rule is a variation on familiar principles. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under the rule in those cases, even though a constitutional violation has occurred, there can be no recovery of damages when the finder of fact can conclude that the loss would have occurred absent the constitutional violation. Under the *Hearn* rule, a municipality should not be assessed damages when a complaining plaintiff has been guilty of misconduct that *could* have been constitutionally punished. Both approaches require a hypothetical reconstruction of the facts. It is true that *Hearn* may require an additional fiction, because the hypothetical legislation is not in place. This may, as in the instant case, simply envision a criminal enactment supplementing an existing civil rule (a common law violation). Protection of the municipal fisc from claims of alleged wrongdoers does not seem extraordinary, given the appeal of the Powell dissent in *Owen*, the remaining availability of equitable remedies and criminal law defenses, and the analysis used a decade ago in *Hearn*.

The court believes that this case could be disposed of on summary judgment if it is established that the noise level attained by plaintiffs was so high as to be constitutionally prohibited under a limitation of time, place and manner such as the recently amended noise ordinance.[5]

For this reason, the court will deny both motions for summary judgment without prejudice to reconsideration. Because the parties' briefs do not address this issue, the case will be removed from the accelerated docket and reset for trial, if necessary, at a later date.

SO ORDERED.

---

5. Dismissal of prior charges probably does not signify that there were no witnesses who could establish, by a preponderance of evidence, that the noise level was unacceptably high.