299 S.E.2d 26

**Donald Lee HACKL**

v.

**Jerry DALE, Supt., HCC.**

**No. 15365.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1982.

Herbert G. Underwood, C. David Morrison and Irene M. Keeley, Clarksburg, for petitioner.

Laurie J. Garrigan and Gray Silver, III, Asst. Attys. Gen., Charleston, for respondent.

MILLER, Chief Justice:

In this original jurisdiction proceeding, the petitioner, Donald Lee Hackl, seeks a writ of habeas corpus. The petitioner was originally sentenced to the Anthony Correctional Center following a jury trial in which he was found guilty of aiding and abetting a daytime burglary. While at the Anthony Correctional Center the petitioner attempted suicide and was sent to Weston State Hospital for a thirty-day emergency observation. The petitioner was then transferred to the Huttonsville Correctional Center to await a placement decision.

The petitioner was placed in Dorm 7 which is used to house prisoners who have been recently convicted and are undergoing presentence diagnostic classification.[1] Dorm 7 is also used to house post-sentence commitments who are referred to as "regulars" and who are awaiting the determination of their placement within our penal system.[2] The petitioner technically was not in either category since he had been placed in the system under the Youthful Offender Act and was sentenced to the Anthony Center under W.Va.Code, 25-4-6. The parties do not discuss this aspect of the case although it appears that W.Va. Code, 25-1-16, permits transfers for health reasons.

On approximately the tenth day of his stay in Dorm 7, the petitioner was allegedly sexually assaulted in the shower area by a fellow inmate who was committed to Dorm 7 for initial diagnostic testing. Upon the petitioner's habeas corpus motion, we

1. W.Va.Code, 62–12–7a, provides in pertinent part:

"Notwithstanding any other provision of law, when any person has been found guilty of, or pleads guilty to, a felony, the court may, prior to pronouncing of sentence, direct that such person be delivered into the custody of the commissioner of public institutions who shall cause such person to be forthwith transferred to the diagnostic and classification division of the Huttonsville correctional center for a period not to exceed sixty days. During such period such person shall undergo examination, diagnosis and classification and he shall then be remanded and delivered to the custody of the sheriff of the county wherein he was found guilty or entered such plea."

2. W.Va.Code, 28–5A–7, provides: "Notwithstanding any provision of the Code to the contrary, all prisoners sentenced to the West Virginia penitentiary at Moundsville after October one, one thousand nine hundred seventy, shall, upon imposition of such sentence, first undergo diagnosis and classification at the Huttonsville correctional center."

authorized his counsel the right to tour, inspect and photograph the facility at Huttonsville to the extent they deem necessary for final disposition of this proceeding. We have been presented with extensive depositions, exhibits and photographs. The petitioner was ordered to be temporarily incarcerated in the Monongalia County Jail, the county of his original conviction, pending the disposition of this case.

Since the granting of the initial petition, the emphasis of this case has shifted from the initial sexual assault incident, the reason we granted leave to hear the case, to the inadequate screening or classification procedures for convicts sent to Dorm 7 of the Huttonsville Correctional Center.

We begin our analysis by recognizing that:

> "Habeas corpus lies to secure relief from conditions of imprisonment which constitute cruel and unusual punishment in violation of the provisions of Article III, Section 5, of the Constitution of West Virginia and of the Eighth Amendment to the Constitution of the United States." Syllabus Point 1, *State ex rel. Pingley v. Coiner,* 155 W.Va. 591, 186 S.E.2d 220 (1972).

*See also Hickson and Jones v. Kellison,* 296 S.E.2d 855 (1982); *Harrah v. Leverette,* 165 W.Va. 665, 271 S.E.2d 322 (1980); *State ex rel. K.W. v. Werner,* 161 W.Va. 192, 242 S.E.2d 907 (1978).

The sexual abuse of a prisoner in a penal institution has been the subject of several opinions by the United States Fourth Circuit Court of Appeals. In *Woodhous v. Commonwealth of Virginia,* 487 F.2d 889, 890 (4th Cir.1973), the court made this statement:

> "A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief. *Holt v. Sarver,* 442 F.2d 304, 308 (8th Cir.1971)."

The court determined that in order to meet the foregoing standard two conditions must be shown:

> "(1) [W]hether there is a pervasive risk of harm to inmates from other prisoners, and, if so, (2) whether the officials are exercising reasonable care to prevent prisoners from intentionally harming others or from creating an unreasonable risk of harm. *See* Restatement (Second) of Torts § 320 (1965)." 487 F.2d at 890.

Later in *Withers v. Levine,* 615 F.2d 158, 161 (4th Cir.1980), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59, a more detailed analysis was made of what is meant by a pervasive risk of harm:

> "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution.... It is enough that violence and sexual assaults occur on the idle tier at MHC with sufficient frequency that the younger prisoners, particularly those slightly built, are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures."

In *Withers, supra,* the petitioner had been the victim of three recorded sexual assaults, two in the facility in which he was presently confined and an earlier one that occurred in a city jail. In addition, there was evidence found by the trial court that "amply demonstrate[d] that the risk of sexual assault was a serious problem of substantial dimensions, particularly for younger prisoners." *Withers, supra* at 161.

Here, we are not presented with a factual record that presents evidence of the level shown in *Withers, supra.* The record does not demonstrate the presence of other sexual assaults such that a reasonable fear for safety can be said to have existed or that prison officials would have been reasonably apprised of the existence of the problem and the need for protective measures.

We are not aware of any decision whereby an isolated incident of sexual assault on one inmate has resulted in a finding that the constitutional prohibition against cruel

and unusual punishment has been violated. *See Woodhous v. Commonwealth of Virginia, supra. See also Withers, supra; Hite v. Leeke,* 564 F.2d 670 (4th Cir.1977); *Vance v. Bordenkircher,* 533 F.Supp. 429 (N.D.W.Va.1982); *Pugh v. Locke,* 406 F.Supp. 318 (M.D.Ala.1976), *aff'd in part* and *rev'd in part sub nom., Newman v. State of Ala.,* 559 F.2d 283 (5th Cir.1977); *Martinez Rodriquez v. Jimenez,* 409 F.Supp. 582 (D.R.I.1976), *aff'd on other grounds,* 537 F.2d 1 (1st Cir.); *Gates v. Collier,* 349 F.Supp. 881 (N.D.Miss.1972), *aff'd on other grounds,* 501 F.2d 1291 (5th Cir.1974).

As earlier noted, after this case was originally accepted and during the course of extended discovery procedures, the petitioner's focus has primarily shifted to the lack of a reasonable intake classification system at Dorm 7. The claim is made that the correctional authorities have failed to segregate the diagnostic population in the dorm so that the non-violent are protected from the violent confines. The United States Supreme Court has indicated in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), that the due process clause does not mandate a system of inmate classification in the initial assignment of offenders to a particular place of confinement. *See also Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).

▉ However, a number of federal courts have held that where a state by statute creates a mandatory system of classification, this gives rise to an enforceable right. In *Ramos v. Lamm,* 485 F.Supp. 122, 159 (D.Colo.1979), *cert. denied,* 450 U.S. 1041, 68 L.Ed.2d 239, 101 S.Ct. 1759 (1981), this law was summarized as follows: "When a classification system is established, however, its decisions 'cannot be arbitrary, irrational or discriminatory,'

*Laaman v. Helgemoe,* 437 F.Supp. [269] at 318, since inmates are not deprived of all protection of due process and equal protection. *See Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); *Lee v. Washington,* 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (per curiam); and *Pugh v. Locke,* 406 F.Supp. at 330." (Footnote omitted) *See also Doe v. Lally,* 467 F.Supp. 1339 (D.Md. 1979); *Palmigiano v. Garrahy,* 443 F.Supp. 956 (D.R.I.1977).

Under W.Va.Code, 62–13–4(f), the commissioner of corrections is required to "[e]stablish a system of classifications of inmates, through a reception and examination procedure, and in each institution a classification committee and procedure for assignment of inmates with the programs of the institution." [3] Furthermore, as we have previously mentioned, W.Va.Code, 28–5A–7, requires all prisoners who are sent to the West Virginia Penitentiary at Moundsville "upon imposition of such sentence to undergo diagnosis and classification at the Huttonsville correctional center."

In this case, the respondents do not disagree that diagnosis and classification is statutorily required. They argue that this issue was brought into this case at a late stage and that they did not have an opportunity to undertake depositions to demonstrate the acceptability of the system. Furthermore, they point to the fact that the Department of Corrections has been working on a redesign of its classification and diagnostic procedures under a National Institute of Corrections grant with Correctional Services Group, Inc. The respondents indicate that this study and accompanying recommendations are in the final stage.

We believe that the questions of the adequacy of the classification and diagnostic procedures at Dorm 7 of the Huttonsville

---

**3.** W.Va.Code, 62–13–4(f), is a part of Article 13 relating to Corrections Management. This same provision was enacted in Chapter 42 of the 1965 Acts of the Legislature along with the prefatory section, W.Va.Code, 62–13–1, which provides:

"This article shall be liberally construed, to the end that persons committed to institutions of the State for crime or delinquency shall be afforded individual and group treatment to reestablish their ability to live peaceably and, consistent with the protection of the community, to release such individuals at the earliest possible date, and to establish a just, humane and efficient program, and to avoid duplication and waste of effort and money on the part of public and private agencies."

Correctional Center cannot be resolved on the present record in this case. Obviously, there is a need for segregating the violent from the non-violent confinees. In this regard, the respondents suggest that we adopt a rule requiring trial courts to provide correction authorities with the commitment order, copies of the presentence investigative report together with any diagnostic reports that have been made regarding the defendant. By making this information available, some preliminary classification can be done as the inmate arrives and before he enters into the diagnostic program.

■ We agree with the respondents and conclude that in the absence of extraordinary circumstances a trial court which directs a criminal defendant to presentence diagnostic procedures under the provisions of W.Va.Code, 62–12–7a, or sentences a defendant to the penitentiary, should include with the commitment order copies of any psychological or other diagnostic reports together with any available presentence report made regarding the defendant.

■ In view of our conclusion that it would be inappropriate on the present record to pass on the merits of the Division of Correction's diagnostic and classification procedures, we remand this case to a designated Judge of the Circuit Court of Kanawha County to enable petitioner's counsel to determine in light of the represented changes being made to the Division of Corrections' classification and diagnostic policies if a further hearing is needed.[4] In any such hearing, the circuit court may consider such matters contained in the various depositions presented to this Court as it may deem relevant.

Remanded.

4. The petitioner does not seek release from incarceration but seeks improvement of his conditions of confinement. Upon the granting of his writ, we temporarily transferred him to the Monongalia County Jail. We believe the petitioner should remain there pending the disposition of the proceeding below or further order of the circuit court.