944 F.2d 901
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Stuart D. KING, Plaintiff-Appellant,
v.
UNITED STATES of America, US Bureau of Prisons, Defendants-Appellees.
 No. 90-3027.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1991.
Decided Sept. 13, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-88-3747-S)
 Argued: Kenneth Anthony Pels, Sr., Borzilleri, Baker & Pels, Washington, D.C., for appellant; James Richard Alsup, Assistant United States Attorney, Baltimore, Md., for appellees.
 On Brief: Gerald C. Baker, Borzilleri, Baker & Pels, Washington, D.C., for appellant; Breckinridge L. Willcox, United States Attorney, Baltimore, Md., for appellees.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Stuart King, an inmate in the federal prison system, was assaulted by another inmate while in a transient holding area in the Lewisburg, Pennsylvania penitentiary. He brought suit in the United States District Court for the District of Maryland under the Federal Tort Claims Act, alleging that the Bureau of Prisons was negligent in overcrowding its transient quarters and in placing within those quarters an inmate with a psychiatric disorder and assaultive tendencies. At the close of King's evidence, the district court dismissed the claim pursuant to Federal Rule of Civil Procedure 41(b). We now affirm that judgment.
 
 I.
 
 2
 On November 16, 1985, Stuart King, a federal prisoner, was assaulted and injured by his cellmate Hassan Francis-El, in a disagreement over a light in the cell. The assault occurred in a dormitory style housing unit which quarters prisoners who are on holdover status. As a result of the attack, King lost two teeth and suffered permanent damage to his right eye.
 
 
 3
 At the time, King was in temporary custody at the Lewisburg penitentiary awaiting transportation to a minimum security Federal Correctional Institution at Lexington, Kentucky, and his assailant was en route to a high security prison. Officials at Lewisburg screen all inmates on holdover status before placing them in the dormitory housing unit. The goal of the screening is to identify potential victims and to provide them individual housing. The other inmates are placed in the group setting. When King was screened, he failed to indicate that he desired a more protective setting and officials observed nothing about him that suggested particular susceptibility to attacks, such as youth or small physical size. When Francis-El was screened, he was accompanied by a form showing the offense of which he was convicted, his security status, and his prior record, which revealed no previous incarcerations. No other records accompanied Francis-El to Lewisburg. He was briefly interviewed by prison staff who found no reason to exclude him from the dormitory unit. King and Francis-El had been cellmates for one month when the attack occurred.
 
 
 4
 King submitted an administrative claim to the Bureau of Prisons in September 1987, which was denied in June 1988. He then filed the present suit in the United States District Court for the District of Maryland. A bench trial was held on December 20, 1989. At the close of plaintiff's evidence, the government moved for dismissal under Fed.R.Civ.P. 41(b). The court granted the motion. This appeal followed.
 
 II.
 
 5
 King argues that the Bureau of Prisons did not use reasonable care in screening prisoners. In particular, King protests that Francis-El's other records, including a presentence investigation and psychiatric evaluation, were either not sent to Lewisburg or were not considered by prison officials there when making placement decisions. While King also complains of overcrowded conditions and inadequate numbers of security guards, his main complaint is that "a known violent psychiatric case was classified as if he were non-violent, and he was placed among low-security risk general population inmates," which was the proximate cause of King's injuries.
 
 
 6
 We cannot agree. The screening system employed at Lewisburg is designed to identify and isolate potential victims rather than potential assailants, the latter being a class that might include the majority of prisoners. This is a reasonable approach to preventing injuries. See Murphy v. United States, 653 F.2d 637, 642 (D.C.Cir.1981); Withers v. Levine, 615 F.2d 158 (4th Cir.1980). Officials had no information suggesting King was particularly likely to be victimized, nor did King request other accommodations when he had the opportunity to do so.
 
 
 7
 Even if the other documents to which King points had been available to authorities, it would have been a reasonable decision to place Francis-El in the dormitory unit. The probation officer did not report that Francis-El was dangerous, and the psychiatric report indicated that he was capable of adjusting to incarceration.
 
 
 8
 Finally, King did not produce evidence that the dorm was overcrowded or understaffed. The trial court concluded that to have two correctional officers assigned to the dormitory unit did not violate a duty of reasonable care and we see no reason to disturb that ruling.
 
 III.
 
 9
 For the foregoing reasons, the judgment of the district court is
 
 
 10
 AFFIRMED.