# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-1069** (Jefferson County 16-F-89 and 16-F-114)

**Nicholas Clinton Hess,**
**Defendant Below, Petitioner**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Nicholas Clinton Hess, by counsel Ben J. Crawley-Woods, appeals the Circuit Court of Jefferson County's October 31, 2017, sentencing order following his first-degree robbery convictions.[1] Respondent State of West Virginia, by counsel Robert L. Hogan, filed a response. On appeal, petitioner asserts that the circuit court committed reversible error in finding that his guilty plea was voluntarily entered, in sentencing him to thirty years of imprisonment, and in denying his motion to release his diagnostic evaluation report.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 20, 2016, petitioner was indicted on one count each of first-degree robbery, burglary, assault during the commission of a felony, and conspiracy to commit robbery following his first-degree robbery of Kory Farmer on March 14, 2016. The next day, September 21, 2016, petitioner and Jamar Wayne McDonald were indicted in a separate case on one count each of first-degree robbery, burglary, assault during the commission of a felony, and conspiracy to commit robbery. These charges stemmed from the first-degree robbery of Allen Tolliver. Petitioner robbed Mr. Tolliver only two days after robbing Mr. Farmer. In fact, petitioner used a gun to commit the second robbery that he stole from Mr. Farmer during the first robbery.

The circuit court held a pretrial conference on December 12, 2016, at which petitioner's counsel noted, for the record, that petitioner had that day received a plea offer from the State.

---

[1]Petitioner's counsel filed a brief in accordance with Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure, which provides that "[i]n extraordinary circumstances, if counsel is ethically compelled to disassociate from the contentions presented in the brief, counsel must preface the brief with a statement that the brief is filed pursuant to Rule 10(c)(10)(b). Counsel should not inject disclaimers or argue against the client's interests."

1

Under the terms of the offer, petitioner would plead guilty to each first-degree robbery charge and be sentenced to concurrent thirty-year terms of incarceration. The remaining charges would be dismissed, and the State would further agree not to initiate recidivist proceedings. The court asked petitioner whether that was the agreement counsel just received and whether petitioner had seen it. Petitioner responded, "Yeah, what I was told was [twenty] from the beginning." The court provided petitioner time to consider the agreement with his counsel and instructed the parties to appear the following week to either proceed with trial or enter into the plea agreement. Petitioner then stated, "Well, I would like to ask if the State could appoint me new counsel at this time please." Because petitioner's counsel only then learned of petitioner's dissatisfaction, and because the court did not "have a motion before me except an oral motion right now[,]" the court deferred consideration of that motion until the following week when the parties could reappear to discuss the plea negotiations.[2] The court further invited petitioner to reduce his oral motion to writing.

On December 19, 2016, the parties appeared before the court and announced that a plea agreement had been reached, with slightly different terms than those announced on December 12, 2016. Namely, petitioner agreed to plead guilty to both first-degree robbery charges, but the State agreed that the sentence for each would be no more than thirty years, and petitioner was free to argue for a lesser term of incarceration.[3] The terms of the agreement were placed on the record, and the court explained to petitioner that the terms of the agreement included a sentencing cap of concurrent thirty-year terms, but that the minimum sentence was ten years. Petitioner confirmed that he understood these terms.

Before accepting petitioner's plea, the court asked petitioner whether he had "done [his] level best to make sure that [his attorney] understands everything that can help him be an effective lawyer for you?" Petitioner responded in the affirmative. Further, the court asked petitioner whether his lawyer has

> done what you hope and expect a good lawyer would do, has he spent time actually visiting with you, sat down and talked with you and listened to you and talked about the discovery and the strength of the State's case and about the defenses and the strategies that you might have available to you at trial, basically given you the benefit of his advice?

---

[2]Petitioner's counsel informed the court that, until petitioner's request for new counsel, he was unaware of petitioner's desire to have new representation. Counsel also said that he believed petitioner was "upset with me [because] I haven't been out to see him with some discovery that was requested." Counsel averred that he had not yet received that discovery material. Counsel further explained that he anticipated receiving that discovery at the close of the hearing and would visit petitioner to discuss the discovery with him.

[3]At the plea hearing, the prosecutor stated that "[t]his morning's modification is that the [thirty-]year sentence that was spoke of in the plea agreement would be a cap and the [d]efendant would be free to argue for a lesser sentence but otherwise the conditions are the same." The court inquired of petitioner, "[I]s this what you understand." Petitioner stated, "Yes."

Petitioner responded, "Yes, Your Honor." Petitioner also confirmed that no one had "promised or suggested that [he] would be rewarded in any fashion, other than the plea agreement, if [he came] in here to plead guilty."

Further, the court advised petitioner of the rights he would waive if he pled guilty. Petitioner entered his guilty plea, nonetheless, and executed a written plea form. Thereafter, the circuit court again ensured that the plea was voluntarily, knowingly, and intelligently entered:

> Now, I make a big deal about you can't change your mind and then the very next thing I do every time is ask, are you sure you don't want to change your mind.

> I am not trying to torment you, I do this in every case, but are you sure, we have gone over a lot of constitutional rights, and if you listen to them closely they are a beautiful bunch of rights when you're charged with an offense.

> If what you really would like to do is have your day in court to come in and see if the State could prove what they claim against you, I would do my dead level best to make sure you got a full, fair and proper trial, the benefit of all those constitutional rights. And if you got convicted and you ended up going down and being convicted and sentenced on it, you have the right to appeal to the West Virginia Supreme Court of Appeals and make sure they thought you got a full, fair and proper trial. These are valuable rights. Are you sure you want to give up all those rights and stand upon this plea, [petitioner]?

Petitioner again replied, "Yes, Your Honor." The court, therefore, accepted petitioner's plea and adjudged him guilty of the two first-degree robbery charges.

Prior to petitioner's sentencing, the court ordered that, in aid of sentencing, petitioner be "remanded to the custody of the Commissioner of the Division of Corrections for the purpose of examination, diagnosis and classification for a period not to exceed sixty days as set forth in W.Va. Code § 62-12-7a."[4] The court also ordered that the examination include a psychiatric evaluation.

The parties appeared for sentencing on July 24, 2017. The court indicated that it had received the results of petitioner's psychiatric and diagnostic evaluation, and that the report's cover letter stated that the evaluators "strongly urge the [c]ourt to honor the confidential nature of these evaluation reports." The court stated that "[i]t's a psychological report in nature and contains candid assessments that would lead me to believe in the context of the cover and the

---

[4]West Virginia Code § 62-12-7a provides that

> when any person has been found guilty of, or pleads guilty to, a felony, or any offense described in article eight-d or eight-b, chapter sixty-one of this code, against a minor child, the court may, prior to pronouncing of sentence, direct that the person be delivered into the custody of the commissioner of corrections, for the purpose of diagnosis and classification for a period not to exceed sixty days[.]

3

substance of it that it was done with the intention that it be for the [c]ourt's eyes only." Accordingly, the court declined to provide a copy of this report to the parties.

In addressing whether petitioner was entitled to receive a copy of the report, counsel for petitioner indicated that the examination was requested to determine whether "any argument . . . could be made for diminished capacity." Counsel stated that if the report addressed that issue, he and petitioner would like to review it. The court stated, "I didn't sense the report was going to that issue, it was going more or less to psychological evaluation that would aid a judge in determining what the course of rehabilitation should be." The court reiterated that it did not want to "betray [the] professionals by releasing information especially submitted to [the court] with the assumption it would be for the [c]ourt's eyes only[,]" but it offered to allow the parties to brief the issue of whether the report should be released for petitioner's review. Petitioner's counsel declined the opportunity and stated, "I think we are prepared to move forward."

Petitioner addressed the court at sentencing. Petitioner expressed remorse and "ask[ed] that you please let me get my [twenty-]year plea back." Further, petitioner expressed his "belie[f] that the offer [he] was first given of [twenty] years is fair, but the [thirty] years I am currently being offered is extreme for what I have done." The court noted the "exceedingly violent" manner in which petitioner committed the first robbery in particular and sentenced him to concurrent thirty-year terms of incarceration for each first-degree robbery conviction. Petitioner's sentence was memorialized in a July 26, 2017, sentencing order. For purposes of the instant appeal, the court reentered its sentencing order on October 31, 2017, and it is from this order that petitioner appeals.

On appeal, petitioner argues that his plea was involuntarily entered because he wanted new counsel and "he believes he originally had a twenty[-]year plea." Petitioner also argues that his thirty-year sentence is unconstitutionally disproportionate based on the fact that his codefendant received a ten-year sentence for one robbery. Finally, petitioner claims that the circuit court erred in failing to release his psychiatric examination report. Petitioner states that "since such information pertains to [him], he believes he should be entitled to review the same."

With respect to petitioner's first assignment of error, this Court outlined the procedures a circuit court should employ to ensure the voluntariness of a plea in *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975). Specifically,

> the trial judge should interrogate such defendant on the record with regard to his intelligent understanding of the following rights, some of which he will waive by pleading guilty: 1) the right to retain counsel of his choice, and if indigent, the right to court appointed counsel; 2) the right to consult with counsel and have counsel prepare the defense; 3) the right to a public trial by an impartial jury of twelve persons; 4) the right to have the State prove its case beyond a reasonable doubt and the right of the defendant to stand mute during the proceedings; 5) the right to confront and cross-examine his accusers; 6) the right to present witnesses in his own defense and to testify himself in his own defense; 7) the right to appeal the conviction for any errors of law; 8) the right to move to suppress illegally

4

obtained evidence and illegally obtained confessions; and, 9) the right to challenge in the trial court and on appeal all pre-trial proceedings.

*Id.* at 191-192, 220 S.E.2d at 667, Syl. Pt. 3. Additionally, when a defendant pleads guilty pursuant to a plea bargain, "the trial court should spread the terms of the bargain upon the record and interrogate the defendant concerning whether he understands the rights he is waiving by pleading guilty and whether there is any pressure upon him to plead guilty other than the consideration admitted on the record." *Id.* at 192, 220 S.E.2d at 667-68, Syl. Pt. 4. Finally,

> [a] trial court should spread upon the record the defendant's education, whether he consulted with friends or relatives about his plea, any history of mental illness or drug use, the extent he consulted with counsel, and all other relevant matters which will demonstrate to an appellate court or a trial court proceeding in Habeas corpus that the defendant's plea was knowingly and intelligently made with due regard to the intelligent waiver of known rights.

*Id.* at 192, 220 S.E.2d at 668, Syl. Pt. 5.

The record demonstrates that the circuit court questioned petitioner as required under *Call*. Indeed, petitioner does not argue that the circuit court failed to comply with *Call*; rather, petitioner complains that his plea was not voluntarily entered because he had requested new counsel and "he thought he had a twenty[-]year plea." Petitioner acknowledges that "the current record does not document a twenty[-]year plea offer[,]" but he, nonetheless, contends that the circuit court should have been alerted to the fact that "something was awry" with counsel's representation or petitioner's understanding of the plea agreement. The record, however, is clear that petitioner understood he was facing a thirty-year cap on his sentence, not a twenty-year cap. Moreover, the record reflects that petitioner did not take the opportunity to reduce his request for new counsel to writing and, by the time he appeared for sentencing, was satisfied with counsel's representation. Accordingly, we find no merit to petitioner's claim that his plea was involuntarily entered.[5]

In support of petitioner's second assignment of error that his sentence is unconstitutionally disproportionate to the crimes committed, petitioner argues that, because "he committed twice the amount of robberies" as his codefendant committed, "he [should] be sentenced to twice the amount of prison time." In other words, petitioner argues that he should be sentenced to an effective twenty-year term because his codefendant in one of the robberies was sentenced to ten years of incarceration.

This Court reviews sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Tyler*, 211 W.Va. 246, 565 S.E.2d 368 (2002) (citation omitted). Article III, Section 5 of the West Virginia

---

[5]Petitioner also claims that his plea offer was increased from twenty years to thirty years because the police officer who arrested him maintained a "personal grudge" against petitioner. As petitioner acknowledges, however, the record does not reflect that he was ever offered a twenty-year sentence. Thus, there is no merit to this claim.

Constitution "contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, [and] has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offen[s]e.'" Syl. Pt. 3, *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981) (citation omitted). "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." *Id.* at 523, 276 S.E.2d at 207, Syl. Pt. 4.[6] Furthermore, "disparate sentences of co-defendants that are similarly situated may be considered in evaluating whether a sentence is so grossly disproportionate to an offense that it violates our constitution." *State v. Cooper*, 172 W.Va. 266, 271-72, 304 S.E.2d 851, 856 (1983). But, "[d]isparate sentences for codefendants are not per se unconstitutional." Syl. Pt. 2, *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984). Rather, "[c]ourts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone." *Id.* at 244, 314 S.E.2d at 407, Syl. Pt. 2.

Although petitioner argues that he and his codefendant, who participated in the second robbery petitioner was convicted of committing, are similarly situated, he offers no facts to support such a conclusion. In fact, petitioner implicitly acknowledges that he and his codefendant are not similarly situated by recognizing that he "committed twice the amount of robberies" as his codefendant. At sentencing, the circuit court highlighted the "exceedingly violent" manner in which petitioner committed the first robbery – a robbery in which petitioner's codefendant did not participate. The circuit court also discussed petitioner's lengthy criminal history and considered the presentence investigation and psychiatric evaluation reports in concluding that concurrent thirty-year sentences were appropriate. We find that petitioner has failed to establish that he and his codefendant are similarly situated. As a result, we find no error in the circuit court's imposition of concurrent thirty-year terms of incarceration.

In support of petitioner's final assignment of error concerning the circuit court's decision not to release his psychological examination report, he relies on *State v. Byrd*, 163 W.Va. 248, 256 S.E.2d 323 (1979), and *Hackl v. Dale*, 171 W.Va. 415, 299 S.E.2d 26 (1982). In *Byrd*, we held that

> [w]here a presentence report has been prepared and presented the court shall, upon request, permit the defendant, or his counsel if he is so represented, prior to imposition of sentence, to read the report exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons and the court shall afford the defendant or his counsel an opportunity to comment on the report, and, in the

---

[6]The crime of first-degree robbery has no fixed maximum sentence. *See* W.Va. Code § 61-2-12.

discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

163 W.Va. at 248-49, 256 S.E.2d at 323, Syl. Pt. 1.

In *Hackl*, we held that

[i]n the absence of extraordinary circumstances a trial court which directs a criminal defendant to presentence diagnostic procedures under the provision of W.Va. Code, 62-12-7a, or sentences a defendant to the penitentiary, should include with the commitment order copies of any psychological or other diagnostic reports together with any available presentence report made regarding the defendant.

171 W.Va. at 416, 299 S.E.2d at 27, Syl. Pt. 4. Notably, we did not direct that the defendant receive a copy of the report in *Hackl*; rather, we directed that the psychological or diagnostic report be provided to correctional authorities for inmate classification purposes. *Id.* at 419, 299 S.E.2d at 30. Nonetheless, petitioner asserts that when read together, *Byrd* and *Hackl* compel the conclusion that he is entitled to a copy of his psychological evaluation report. We disagree and find no error.

In *State v. Plumley*, 184 W.Va. 536, 401 S.E.2d 469 (1990), we stated that "[g]enerally, a defendant has a right to read and review his presentence investigation report, except to the extent that it contains confidential or harmful information[,]" and that a diagnostic evaluation performed under West Virginia Code § 62-12-7a "is to be treated in the same manner as a presentence report." *Id.* at 542, 401 S.E.2d at 475. But "[t]he refusal to disclose a presentence report or diagnostic evaluation or portions thereof is within the sound discretion of the trial court, and consequently, must be accorded great deference." *Id.* We find no abuse of discretion in the circuit court's refusal to provide the psychiatric evaluation report to petitioner. The circuit court summarized portions of the report, noting that "something tells me they took the PSI and copied it word-for-word to a degree and then added their psychological testing and diagnostic impressions."[7] Petitioner was concerned solely with any findings within the report that would allow him to argue for diminished capacity. The circuit court responded that the report did not speak to that issue, but was "more or less [a] psychological evaluation that would aid a judge in determining what the course of rehabilitation should be." The court, however, offered petitioner the opportunity to brief the issue of whether he should receive a copy of the report. Critically, petitioner declined that opportunity and stated, "I think we are prepared to go forward [with sentencing]." Because the court addressed the report's contents, and because petitioner declined the opportunity to argue for release of the report, we find no error in the court's decision to preserve the confidentiality of the report.

For the foregoing reasons, the circuit court's October 31, 2017, resentencing order is hereby affirmed.

---

[7]At sentencing, petitioner acknowledged prior receipt of the presentence investigation report and offered "no additions or corrections."

Affirmed.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

8